Accordingly, defendant's motion to dismiss Count VI of plaintiff's complaint is granted.

### ORDER

Pursuant to the memorandum filed herein this day,

**IT IS HEREBY ORDERED** that plaintiff's motion to dismiss Count II (breach of contract), and Counts III, IV and V (federal trademark violations) of defendant's Second Amended Counterclaim, converted to a motion for summary judgment in accordance with Rule 12(c), Fed.R.Civ.P., is denied.

**IT IS FURTHER ORDERED** that defendant's motion for partial summary judgment on the issue of damages in Count I (breach of contract and breach of duty of fair dealing), and for summary judgment on Count II (punitive damages for breach of contract and breach of duty of fair dealing), Counts III, IV and V (federal antitrust violations), and Count VI (prima facie tort), of plaintiff's First Amended Complaint, is granted in part and denied in part as to Count I, denied as to Counts III, IV and V, and granted as to Count VI.

**IT IS FURTHER ORDERED** that defendant's motion in limine filed October 5, 1984 and plaintiff's motion in limine filed October 12, 1984 are denied as moot.

Melvin **JENKINSON**, Plaintiff,

v.

**CHEVRON CORPORATION**, Chevron Long-Term Disability Plan, et al., Defendants.

No. C–85–4567 EFL.

United States District Court, N.D. California.

May 12, 1986.

---

plaintiff could have brought another nominate tort is still the law in Missouri. *See Costello v. Shelter Mutual Insurance Co.,* 697 S.W.2d 236, 239 (Mo.Ct.App.1985). The Court further notes that the prima facie tort doctrine is disfavored by Missouri courts. *See Bandag,* 662 S.W.2d at 556.

Stephen Kaus, Karen A. Havilan, Kaus & Kerr, San Francisco, Cal., J. Kenneth Donnelly, Oakland, Cal., for plaintiff.

David W. Trotter, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

LYNCH, District Judge.

### INTRODUCTION

■ Melvin Jenkinson brought suit against the Chevron Long-Term Disability Plan ("Plan"), the Chevron Long-Term Disability Plan Organization ("Plan Organization"), the predecessor in interest of those entities, and a host of other defendants.[1] The crux of plaintiff's complaint[2] is that defendants improperly discontinued long-term disability payments to which plaintiff claims he is entitled. Pursuant to Employee Retirement Income Security Act of 1974 ("ERISA") section 502(a)(1)(B), 29 U.S.C.

1. Plaintiff concedes that the only proper defendants in this action are the Plan, the Plan Organization, and their respective predecessors in interest. Plaintiff's Reply to Memorandum in Opposition to Motion to Amend Complaint at 6–7.

2. Plaintiff has moved to file a second amended complaint. Plaintiff has already conceded that the complaint is defective in that it names improper defendants, *see* note 1, and seeks punitive damages which are not available. Plaintiff's Reply to Memorandum in Opposition to Motion to Amend Complaint at 5. Nevertheless, acting with an abundance of caution so as not to prejudice any rights of plaintiff that may be

jeopardized by the passage of time, the Court will allow the filing of the second amended complaint, may be filed, but all defendants save the Plan and the Plan Organization, and their respective predecessors in interest, are hereby dismissed from the case. Similarly, all claims for punitive damages are hereby dismissed. The Court is also disposed to dismiss any claim for extracontractual damages should the issue subsequently arise. *See Hancock v. Montgomery Ward Long Term Diability Trust*, 787 F.2d 1302, 1307 (9th Cir.1986) (Extracontractual damages against a fiduciary are not available as a form of equitable relief under ERISA section 502(a)(3).).

section 1132(a)(1)(B) (1982), plaintiff seeks the benefits that he claims have been denied him and a declaration of his right to future benefits. He also seeks redress pursuant to ERISA section 502(a)(3), 29 U.S.C. section 1132(a)(3) (1982), for breach of fiduciary duty, ERISA section 404, 29 U.S.C. section 1104 (1982), and for failure to adhere to the claims procedure established by the Plan, ERISA section 503, 29 U.S.C. section 1133 (1982).

Plaintiff was injured when he was pinned between two vehicles while working as a manager of a Chevron service station in May of 1975. Although he continued to work following the injury, he was plagued by pain. In May of 1976, he was diagnosed as having chronic post-traumatic muscle spasm syndrome, and, under his doctor's advice, he ceased working.

Plaintiff's application for long-term disability was approved, and he began receiving benefits effective May 20, 1977. The benefits were interrupted when he returned to work in August of 1978, but they were reinstated when he again ceased working in November 1978 pursuant to his physician's advice. As of August 9, 1979, plaintiff had received 24 months of long-term benefits.

Under the terms of the long-term disability plan governing plaintiff's benefits, after receiving benefits for 24 months, a recipient must satisfy a more difficult definition of disability in order to continue receiving benefits than originally must have been satisfied to obtain benefits. Section 12(n) of the Plan reads in relevant part as follows:

"Total Disability" and "Totally Disabled" mean that because of injury or sickness:

(A) During the Member's applicable Waiting Period and for the first two years the Member is receiving benefits under the Plan, the Member is unable to perform one or more of the substantial duties of the Member's *Usual Occupation* (as determined by the Company) or any other reasonable occcupation that is available within the Company for which the Member is reasonably trained, qualified, or experienced....

(B) After the Member has received twenty-four (24) months of benefits under the Plan, the Member is unable to perform *any occupation* for which the Member is qualified or may reasonably become qualified by reason of education, training or experience....

Standard Oil Company of California Long Term Disability Plan Organization Long-Term Disability Plan (Amended and Restated Effective August 1, 1976), Defendants' Exhibit A at 11–12 (emphasis added).

The claims administrator determined that as of January of 1980, plaintiff's benefits should be terminated because he could not satisfy the more rigorous "any occupation" test required by section 12(n)(B) of the Plan. Letter from Robert Schulte to Melvin Jenkinson of February 14, 1980, Defendants' Exhibit F at 79–80. On January 12, 1983, the Plan Organization, through its review panel, rejected plaintiff's appeal from two reaffirmations of that decision and concluded that the original decision of the claims administrator was correct in denying benefits. Letter from R.K. Maggy to William Schuler of January 13, 1983 (and attached findings), Defendants' Exhibit F at 1–3.

The parties have filed cross motions for summary judgment addressing each of plaintiff's claims arising from the termination of his benefits. For the reasons articulated below, the Court concludes that the Plan Organization's decision to terminate plaintiff's benefits was not supported by substantial evidence and must be reconsidered in light of this opinion.

## DISCUSSION

■ This Court can overturn the Plan Organization's decision to terminate benefits only if the decision were arbitrary and capricious, not supported by substantial evidence, or erroneous on a question of law. *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1093 (9th Cir.1985). Where, as here, the only evidence concerning plaintiff's employability was conclusory statements that

failed to specify particular jobs that would not require exertion or skills beyond the capability of plaintiff, the Court must conclude that the fiduciary's decision that plaintiff was not disabled was not supported by substantial evidence. *See Farrow v. Montgomery Ward Long Term Disability Plan*, 176 Cal.App.3d 648, 663, 222 Cal.Rptr. 325 (1986).

 Logic dictates that a determination as to whether the "any occupation" definition of disability has been met by a claimant requires consideration of two types of evidence. First, there must be evidence as to the medical condition or degree of impairment of the claimant. Additionally, there must be evidence as to the existence of jobs for those of the claimant's qualifications, or potential qualifications, in light of his or her impairment.[3] *Cf. Heckler v. Campbell*, 461 U.S. 458, 460–61, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983) (upholding the use of medical-vocational guidelines, the Court described the process of determining eligibility for social security benefits in terms of assessing both impairment and employability). While the first type of evidence is primarily the domain of medical professionals, the second requires the analysis of someone knowledgeable about the physical demands and requirements of occupations for which a claimant might be qualified. As such, it tends to be

the domain of vocational experts although it could be provided by a medical professional who could relate a claimant's impairment to the physical requirements of particular jobs.[4] *Cf. Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) (where a topic requires special experience, only testimony of someone with such experience is to be considered). Such evidence might even be considered by reference to guidelines such as those promulgated for use by the Social Security Administration. 20 C.F.R. part 404 subpart P, Appendix 2 (1985). *See Heckler*, 461 U.S. at 461–62, 103 S.Ct. at 1954–55 (explaining how guidelines correlate physical ability, age, education, and work experience to the availability of jobs in the national economy).[5]

 The vocational evidence in this case was far from substantial. Defendants placed great weight on the statement by Dr. Roy L. Curry, a psychiatrist serving as an independent medical examiner in plaintiff's workers compensation litigation, to the effect that "it seems likely [plaintiff] would have a disability in which he was precluded from approximately 50% of the jobs in the open labor market...." Letter From Curry to Mark Tune and Donald Gangemi of March 25, 1982, Defendants' Exhibit F at 57; *see* Findings of Review Pan-

---

**3.** While there may be no need for vocational evidence where there is indication of either no impairment or total impairment, *cf. Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983) (social security regulations recognize that some impairments are so severe they preclude any employment), plaintiff clearly had some impairment (although whether the source of the impairment was physical or psychological was apparently uncertain), Review Panel Findings, Defendants Exhibit F. at 3, and defendants contend that it was not total.

**4.** Defendants have argued that the recent Ninth Circuit decision in *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302 (9th Cir.1986), supports their motion for summary judgment. The Court disagrees. In *Hancock*, before determining that the plaintiff was not disabled, "the Trust sent Hancock's file to a vocational rehabilitation service for a 'hypothetical evaluation' of Hancock's vocational options. The service reported a person with her level of

disability could engage in any of several *enumerated* sedentary occupations." 787 F.2d at 1305 (emphasis added). Thus, the fiduciary in that case had before it precisely the kind of evidence the Court is requiring defendants to consider in this case.

**5.** The Court is not attempting to reshape the disability test of the Plan into the disability test used in determining social security eligibility, nor is the court requiring that defendants prove that there are jobs plaintiff could perform *available* to him. *See Jestings v. New England Telephone & Telegraph Co.*, 757 F.2d 8, 10 (1st Cir.1985) (district court erred in holding that plan required not just that there be a job at which plaintiff was capable of working but that such a job also be available). The Court is simply requiring that where, as here, the disability definition of a plan depends on vocational data, reliable evidence of those vocational data must be considered.

el, Defendants' Exhibit F at 3. However, Dr. Curry himself pointed out the limitation of his estimation, which was made without the benefit of vocational expertise, when he concluded his letter with the following disclaimer: "By quoting the above percentage rate of disability I was not attempting to take into consideration the raters [sic] responsibility to evaluate age and occupation but was simply attempting to pigeonhole my assessment and estimation of his open labor market restriction." Curry Letter, Defendants' Exhibit F at 58.

■ Similarly, Dr. Curry's statements that plaintiff had asserted that "he really was capable of performing some occupational activities," *id.* at 49, and that plaintiff had given consideration to opening a radiator shop where a hoist would do the work, *id.* at 57, hardly constitute substantial evidence that there were jobs plaintiff could do absent a showing that plaintiff had knowledge of the demands of the occupations he had in mind. *Cf. American Key Corp. v. Cole National Corp.,* 762 F.2d 1569, 1580 (11th Cir.1985) (expert opinions cannot be based on the opinions of others).

In short, the "any occupation" test adopted in the plan requires that the fiduciary give meaningful consideration to plaintiff's vocational options. Such consideration cannot be rendered unless the record contains competent evidence linking the claimant's medical condition and other qualifications to his ability to perform specified jobs. In this case, the record is devoid of evidence which a reasoning mind would accept as sufficient to support the conclusion that there were jobs plaintiff could have performed. *See LeFebre v. Westinghouse Electrical Corp.,* 747 F.2d 197, 208 (4th Cir.1984) (defining "substantial evidence"). Consequently, the Court must conclude that, in spite of the abundance of medical evidence, defendants' decision was supported by less than substantial evidence because there was scant vocational evidence. *See Farrow,* 176 Cal.App.3d at 660, 663, 222 Cal.Rptr. 325; *see also Torminio v. United Food & Commercial Workers International Union Industry Pension Fund,* 548 F.Supp. 1012, 1013 (E.D.Mo. 1982), *aff'd,* 712 F.2d 882 (8th Cir.1983) (refusing to overturn fiduciary's denial of disability benefits only after fiduciary had, on remand, considered, but apparently discounted or rejected, the opinion of a vocational expert).[6]

### CONCLUSION

Because defendants' decision to terminate plaintiff's benefits was not supported by substantial evidence, this case must be remanded to the fiduciary so that findings as required by this Opinion can be made.

■ Ordering remand moots plaintiff's claim for relief for violation of ERISA section 503, (failure to adhere to claims procedure), for the only relief available should a violation of the claims procedure be found is remand. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1353 (9th Cir.1984), *cert. denied,* ―― U.S. ――, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985) (claimant who suffers because of a fiduciary's failure to comply with procedural requirements is ordinarily entitled to no substantive remedy); *Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388, 393 (7th Cir.1983) (remand to fiduciary for violation of ERISA section 503).

■ Because a determination that plaintiff is entitled to benefits would mitigate most, if not all, of plaintiff's damages allegedly stemming from a breach of fiduci-

---

**6.** This decision does not shift the burden of proving no entitlement to the fiduciary, as defendants contend. By requiring the consideration of competent vocational evidence, the Court is simply complying with its duty as a reviewing court to insure that decisions by a fiduciary are supported by substantial evidence. *LeFebre,* 747 F.2d at 208. While the *Farrow* court expressed this notion in terms of shifting burdens of proof, 176 Cal.App.3d at 662, 222 Cal.Rptr. 325, this Court maintains that the fiduciary's obligation to base its decision on substantial evidence persists even if the burden of proving entitlement rests on the claimant throughout the proceedings. At whatever stage the fiduciary renders a decision, that decision must be supported by substantial evidence in light of the arguments and evidence presented to the fiduciary.

ary duty, the claim for violation of ERISA section 404 is also dismissed without prejudice.

IT IS SO ORDERED.