**Melford W. GUNDERSON,
Plaintiff/Appellee,**

v.

**W.R. GRACE & CO. LONG TERM DISABILITY INCOME PLAN, Defendant/Appellant.**

**No. 88–5195–SD.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1988.

Decided May 3, 1989.

Elmer B. Trousdale, St. Paul, Minn., for defendant/appellant.

John S. Finn, Denver, Colo., for plaintiff/appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and REASONER *, District Judge.

REASONER, District Judge.

W.R. Grace & Co. Long Term Disability Income Plan [hereinafter "the Plan"] appeals from the order of the South Dakota District Court[1] granting summary judg-

---

* The HONORABLE STEPHEN M. REASONER, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota.

ment in favor of Melford Gunderson. Gunderson brought suit against the Plan pursuant to the Employee Retirement Income Security Act, [hereinafter ERISA], 29 U.S.C. § 1001, *et seq.*, for wrongful termination of the benefits Gunderson had been receiving under the Plan.

On April 11, 1981, Gunderson, while employed by Bomac Drilling as a tool pusher, severely injured his dominant right arm in a work-related accident. Gunderson's injury required extensive medical treatment, including several surgeries.

Gunderson's job as a tool pusher involved supervision of employees on an oil-rig drilling site, with associated paper work. On June 1, 1983, Bomac Drilling terminated Gunderson on the basis that he could no longer perform the duties associated with the job. Since the accident, Gunderson has not received "any training, education, or experience in any new field or occupation. The only job skills he has presently are that of a manual laborer and that of an oilrig tool pusher." *Gunderson v. W.R. Grace & Co. Long Term Disability Plan,* Civ. 87–5008, at 3 (D.S.D.1988).

As an employee of Bomac Drilling in April of 1981, Gunderson was covered under the Plan, which provides long-term disability benefits to covered employees who are totally disabled as defined by the Plan. The Plan awarded Gunderson disability benefits from October of 1981 to December of 1985. Gunderson received notice from the Plan by letter dated November 12, 1985 that his disability benefits were being terminated because he was no longer totally disabled as defined by the Plan. The basis for this determination as alleged by the Plan was that Gunderson's attending physi-

cian, Ray Miller, M.D., certified that Gunderson was "not totally disabled to perform the duties of any occupation" and that Gunderson was "capable of performing clerical/administrative or sedentary work activity."

Under the Plan, there are two categories of total disability. Under the first category [hereinafter "first category of disability"] the Plan provides that during the first twenty-four months, after a six month qualifying period, an employee is totally disabled if "he is unable to perform any and every duty pertaining to his occupation and is not engaged in any occupation or employment for wage or profit." Under the second category [hereinafter "second category of disability"], after the first twenty-four months, an employee is totally disabled if he is completely unable "to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Covered Employee is or becomes reasonably qualified by training, education or experience." [2]

There is no dispute between the parties that Gunderson was totally disabled as defined by the Plan under the first category of disability. Gunderson received disability benefits under this category from October of 1981 to October of 1983. Thereafter, Gunderson received benefits under the second category of disability until December of 1985. The Plan now contends that Gunderson is no longer disabled as defined in the second category of disability.

The district court found there was not substantial evidence to support the Plan's determination that Gunderson was not totally disabled.[3] For the reasons set forth

---

**2.** Section 3(2) of the Plan provides:

　2. The term Totally Disabled or Total Disability means the complete inability of a Covered Employee to engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Covered Employee is or becomes reasonably qualified by training, education or experience, except that during the Qualifying Disability Period plus the first twenty-four months of absence from work due to disability thereafter, the Covered Employee shall be deemed Totally Disabled while he is unable to perform any and every duty pertaining to his occupation

and is not engaged in any occupation or employment for wage or profit.

**3.** Since the briefs in this case were submitted and oral arguments were heard, the United States Supreme Court has determined that the standard of review for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is a de novo standard, rather than an arbitrary and capricious standard. The Court in *Firestone Tire & Rubber Company v. Bruch,* —— U.S. ——, ——, 109 S.Ct. 948, 951, 103 L.Ed.2d 80 (1989) stated:

　Consistent with established principles of trust law, we hold that a denial of benefits

below, we affirm the district court's granting of summary judgment in favor of Gunderson.

The Plan argues that there was substantial evidence to support the termination of benefits. Specifically, the Plan points to the opinions of Dr. Ray Miller, Gunderson's treating physician, and Dr. Harold Hase, a clinical psychologist, to support its position that Gunderson is no longer disabled. The Plan maintains that these opinions demonstrate that Gunderson now has sufficient skills to perform clerical/administrative or sedentary work, even without retraining. As further evidence of his present capabilities, the Plan points to Gunderson's former job, which involved "supervising other employees with associated paper work...."

Dr. Miller's opinion does not support the position that Gunderson is able to perform clerical/administrative or sedentary work without retraining. The record in this case reflects three reports submitted by Dr. Miller to the Plan regarding Gunderson's condition. In his first report to the Plan, dated October 15, 1982, Dr. Miller categorized Gunderson's physical impairment as Class 4, "[m]oderate limitation of functional capacity, capable of clerical/administrative (sedentary) activity (67–70%)." Dr. Miller made this same physical impairment classification in his second report to the Plan, dated August 12, 1983. In the second report Dr. Miller also indicated that Gunderson was not totally disabled from any other work. However, Dr. Miller qualified his opinion regarding Gunderson's capabilities by stating that retraining would be necessary in order for Gunderson to perform duties of any other occupation. Based upon the information before the Plan in October of 1983, the Plan determined that Gunderson was disabled under

the second category of disability as defined in section 3(2). That is, Gunderson was completely unable "to engage in any and every duty pertaining to any occupation or employment" for which he was or had become "reasonably qualified by training, education or experience."

Dr. Miller submitted a third report to the Plan, dated September 23, 1985. His assessment of Gunderson's impairment in that report was essentially the same as his assessments in 1982 and 1983. Nonetheless, the Plan decided to terminate Gunderson's benefits on the basis that he was capable of performing clerical/administrative work. The Plan made this decision despite Dr. Miller's previous opinions that Gunderson would have to be retrained in order to perform such work.

The Plan argues that Dr. Miller is not qualified to give an opinion regarding what vocational training or rehabilitation would be needed since he is not a vocational rehabilitation specialist. Gunderson maintains that if Dr. Miller is not so qualified, then the Plan should not have terminated his benefits without the aid of a qualified opinion from a vocational expert. We agree that before terminating benefits, the Plan should have obtained a vocational expert's opinion to determine if Gunderson is presently capable, in light of his physical impairment, to perform "any occupation." *See Jenkinson v. Chevron Corporation,* 634 F.Supp. 375, 379 (N.D.Cal.1986) (citing *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)). Without that information, we cannot say there was substantial evidence to support the Plan's decision.[4] *See Jenkinson,* 634 F.Supp. at 379–80.

challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.... [W]e need not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries. Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of

whether the administrator or fiduciary is operating under a possible or actual conflict of interest.

We find that the Plan's decision to terminate Gunderson's benefits fails under either an arbitrary and capricious standard or under a de novo standard.

4. We realize that the Plan contends that the burden was upon Gunderson to prove that he was disabled. Gunderson apparently met this burden in October of 1983 when the Plan was

As to the opinion of Dr. Hase, we also believe that it does not support the Plan's position. Dr. Hase is a clinical psychologist who evaluated Gunderson in October of 1983. Dr. Hase indicates in his report that Gunderson has "adequate intellectual abilities for retraining in any of a variety of areas." However, nothing in the report indicates that Gunderson could perform clerical/administrative or sedentary work without such retraining or that retraining has occurred. In fact, the Plan admits that Gunderson has received no training, education, or experience in any new field or occupation.

If Dr. Miller's August, 1983 report had led the Plan to find that Gunderson was not disabled under the second category of disability, and if the Plan had terminated his benefits when the first twenty-four months period had expired, then the Plan's argument that its decision should be given deference might have some merit. However, we do not believe such deference encompasses the Plan's decision to use the same evidence which once supported its finding of disability to now support a finding, applying the same definition of disability under the second category, of no disability.

Having carefully reviewed all the medical records and opinions before the Plan in making its decision to terminate Gunderson's disability benefits, we can find no additional evidence presented to the Plan in late 1985 to support the conclusion that Gunderson was no longer disabled.[5] The medical assessments of Gunderson's disability and the extent of his physical impairment remained essentially the same from 1981 to 1985. More importantly, the evidence in the August 12, 1983 medical report by Dr. Miller, which led the Plan to find Gunderson disabled under the second category of disability, was the same as that in the September, 1985 report which the

Plan now claims supports its finding that Gunderson is not disabled under the second category. Thus, we agree with the district court that the Plan's decision to terminate Gunderson's disability benefits was not supported by substantial evidence.

The final argument raised by the Plan is that the district court erred in awarding Gunderson attorneys' fees. The Plan further argues that even if the award of fees was appropriate, the amount of Gunderson's attorneys' fees is unreasonable.

■■■ The award of attorneys' fees under ERISA, 29 U.S.C. § 1132(g), is discretionary. *Lawrence v. Westerhaus*, 749 F.2d 494, 495 (8th Cir.1984); *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir. 1984). The district court's determination regarding attorneys' fees should not be reversed except upon abuse of discretion. *Hechenberger v. Western Electric Company*, 786 F.2d 347, 348 (8th Cir.1986). A prevailing plan beneficiary or participant "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1356 (8th Cir.1980). The burden of proving that special circumstances exist is on the losing defendant. *Id.*

■ In the present case, the district court held that the Plan did not meet its burden of demonstrating special circumstances. Accordingly, the court awarded Gunderson attorneys' fees. We find nothing in the record before us to indicate that the district court abused its discretion in doing so.

■ The Plan also argues that the amount of Gunderson's fees is unreasonable due to the number of attorneys and non-attorneys involved in Gunderson's representation.[6] The Plan maintains that the fees awarded for the work of the law

---

first faced with the decision of whether to award Gunderson disability benefits under the second category of disability.

**5.** In addition to the medical reports of Dr. Hase and Dr. Miller, the Court has examined the reports of Dr. Frank Ise and Dr. Mel Weinstein.

We find nothing in those reports to support the Plan's position.

**6.** Eight attorneys, two law clerks and two legal assistants were involved in Gunderson's representation in this matter.

clerks and legal assistants are not reasonable attorneys' fees.

Again, the determination of the reasonableness of Gunderson's attorneys' fees was within the discretion of the district court. The Plan has failed to demonstrate that the district court abused its discretion. Moreover, the work of the law clerks and legal assistants is compensable under an award of attorneys' fees. *See Dependahl v. Falstaff Brewing Corporation*, 496 F.Supp. 215 (E.D.Mo.1980), *aff'd*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). We, therefore, affirm the district court's decision regarding attorneys' fees.