**Donald BRUMM, Plaintiff,**

v.

**BERT BELL N.F.L. RETIREMENT PLAN, et al., Defendants.**

**No. 89–4361–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

Sept. 18, 1992.

260

Anthony R. Behr, Helmut Starr, Suelthaus & Kaplan, St. Louis, Mo., Robert E. Staed, Jr., Clayton, Mo., for plaintiff.

Richard H. Ralston, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court are defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment. Plaintiff Donald Brumm brings this action against the Bert Bell NFL Player Retirement Plan ("Plan"), its trustees and its administrator under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff currently receives $750.00 per month in disability benefits from the Plan. He challenges the decision of the Plan awarding him that amount of benefits.

### I. Facts

Plaintiff Donald Brumm is a former NFL football player. He played for the St. Louis Cardinals football team from 1963 to 1969 and in 1972, and for the Philadelphia Eagles football team from 1970 to 1971. Brumm played briefly in the WFL after he left the NFL. During his football career, Brumm suffered multiple knee and back injuries. He underwent surgery on his left knee in 1969. His right knee was also injured, but it did not require surgery. Brumm also suffers from traumatic spondylolisthesis between the second and third lumbar vertebrae, an injury caused by forward displacement of one vertebrae over another. Brumm cannot identify a single, identifiable incident during his football career which caused his back problems.

Although Brumm suffered numerous injuries during his long football career which may have contributed to his back problems, those injuries did not disable him at the conclusion of his football career. After his football career, he continued to work as a truck driver from 1973 to 1977, and as a truck dispatcher from 1977 to 1978. The back injuries reportedly gave him difficulty

in 1977, five years after he quit playing football. On October 5, 1977, while driving a truck for Orscheln Truck Lines, Brumm was involved in an accident. He was thrown through the windshield and landed on the hood of the truck. Brumm went to the hospital by ambulance, where he was placed in traction for his back.

Brumm continued to work after his truck accident. In 1977, he worked as a dispatcher for the trucking company. He worked for a surveyor from 1978 to 1979. He owned and operated a Dairy Queen restaurant from 1980 to 1984. Brumm has been unemployed since December 1984.

The Plan was established through collective bargaining in the National Football League for the purpose of providing various benefits to NFL football players. Among the benefits provided are three levels of disability benefits. A player is eligible for the first level of benefits under Plan § 5.1 if a total and permanent disability "results from a football injury incurred while an Active Player." A player receives not less than $4,000 per month under the first level of benefits (hereinafter "Level 1 T & P"). A player is eligible for the second level of benefits under Plan § 5.1 if the total and permanent disability "results from other than a football injury" (hereinafter "Level 2 T & P"). A player receives not less than $750 per month under the second level of benefits (hereinafter "Level 2 T & P"). "Total and permanent disability" is defined in Plan § 5.2 for both Level 1 and Level 2 T & P benefits as a disability which prevents an eligible Plan participant from engaging "in any occupation or employment for remuneration or profit." A player is eligible for the third level of benefits under § 6.1 of the Plan, called Line-of-Duty benefits, if he incurs a "substantial disablement" arising out of football activities. Line-of-Duty disability benefits are limited to a sixty-month duration. They are not at issue in this case.

The Summary Plan Description in effect on November 30, 1984 does not define the meaning of the phrase "a football injury incurred while an active player," which is contained in § 5.2 of the Plan.

Section 8.4 of the Plan vests in the Retirement Board ("Board") the authority to control and manage the operation of the Plan, subject to certain restrictions which do not apply to this case. The Retirement Board has "all necessary powers incident to the creation, administration, implementation and operation of the Plan and Trust, including but not limited to the power: (A) To define and amend the terms of the Plan and Trust, to construe the Plan and Trust and to reconcile inconsistencies therein." Section 8.13 of the Plan provides "[w]henever in this Plan and Trust discretionary powers are given to the Retirement Board, it shall have the broadest discretion permitted under the Act, and its decision shall, to the extent permitted by the Act, be binding upon all persons affected thereby. The Retirement Board shall exercise its discretion in a nondiscriminatory manner."

Brumm first inquired about applying for benefits from the Plan on August 20, 1984. The Plan Administrator sent Brumm an application on August 24, 1984. Brumm submitted the completed application on November 30, 1984. In the application, Brumm stated that his disability started on October 4, 1977, several years after he left football and the day before his truck accident.

On December 17, 1984, Dr. Dale Darnell examined Brumm in connection with his application for disability benefits under the Plan. Dr. Darnell concluded on a Physician's Report that Brumm was not totally and permanently disabled but was limited to sedentary employment. On February 19, 1985, Brumm also applied for Social Security disability benefits. In connection with that application, on March 11, 1985, Dr. Glenn Browning examined Brumm and concluded that he was limited to sedentary activities.

On April 2, 1985, after reviewing Brumm's application and Dr. Darnell's medical report the Retirement Board denied Brumm's application for benefits. The Board sent Brumm written notice of the denial. Brumm, with the aid of an attorney, appealed the Board's denial of benefits. The Board denied Brumm's ap-

peal on June 19, 1985 and sent him written notice of this denial on July 22, 1985. In reaching its decision, the Board reviewed Dr. Garth Russell's reports from November 1978 and November 1984. The Board also considered Dr. Browning's March 1985 reports, the December 1984 report by Dr. Darnell, and a May 20, 1985 report by K.H. Reese, a psychologist. Reese had performed a psychological evaluation of Brumm at his attorney's request. Reese administered the Minnesota Multiphasic Personality Inventory to Brumm and concluded that he was suffering from depression, anxiety and anger and that he was "clearly at risk psychologically."

After the Board denied his appeal, Brumm obtained a full psychological evaluation. On November 18, 1985, psychiatrist C. Dean Monroe examined Brumm and diagnosed him as having an "adjustment disorder with mixed emotional features." Brumm then sought to obtain Social Security disability benefits for his combined physical and psychological problems. Based on the medical evaluations and reports of Dr. Russell and Dr. Browning and the new psychological reports of Dr. Monroe, as well as on the testimony of a vocational expert, Dr. Arthur F. Smith, the Administrative Law Judge ("ALJ") concluded that although Brumm's physical disabilities alone did not entitle him to Social Security disability benefits, this physical limitation, in combination with his psychological or nonexertional limitations, rendered him disabled as defined by the Social Security Act. The ALJ determined that the onset of Brumm's disability was December 15, 1984.

After receiving the favorable decision on his application for Social Security benefits, Brumm appealed the Board's denial of his application for benefits under the Plan. The Board tabled the appeal on June 19, 1986 and August 21, 1986 so that it could obtain a neutral evaluation of Brumm's psychological condition. The Board requested that Brumm see a psychologist for a neutral psychological evaluation.

Dr. Claude Werth conducted the psychological examination on September 4, 1986 and October 16, 1986. Dr. Werth's November 5, 1986 report stated that Brumm was totally and permanently disabled from a combination of depressive disorder and back pain. On December 17, 1986, by mail ballot, the Board approved Level 2 T & P disability benefits for Brumm effective December 1, 1986 through March 1, 1987, subject to formal approval at the March meeting. On January 21, 1987, Brumm received a letter telling him that he had been approved for Level 2 T & P disability benefits.

On January 20, 1987, a decision was handed down in a consolidated arbitration hearing of several cases submitted to arbitration pursuant to the Plan. The cases were submitted to arbitration because the Player Trustees and the management Trustees disagreed over application of the Plan to certain players' claims for disability benefits. The neutral arbitrator established the following criteria for determining a player's eligibility for Level 1 T & P benefits:

(a) The player must incur a disability resulting from "a" football injury, that is, from one identifiable injury; and

(b) The player must be totally and permanently disabled within a reasonable time after leaving football.

The arbitrator established the following criteria to determine a player's eligibility for Level 2 T & P disability benefits:

(a) the player must be totally and permanently disabled; and

(b) the player's disability may arise from a number of injuries, not one identifiable football injury.

At the March 5, 1987 Board meeting, the Board approved the continuation of Brumm's Level 2 T & P disability benefits and approved his receiving dependent child benefits. The Board tabled consideration of a disability onset date of December 1984 and a reclassification to Level 1 T & P benefits. A March 11, 1987 letter informs Brumm of this decision but does not give any basis for the earlier decision denying Level 1 T & P benefits.

At the May 28, 1987 Board meeting, Brumm's requests for an earlier onset date

and reclassification were denied. The May 28 record noted that all materials from the March 5 files were attachments and were presented to the Board member for consideration. The March 5 record indicated that all documents listed in the letter from Brumm's attorney were in the file at the meeting. Thus, by reference to the Board's record, it can be assumed that the Board had before it (1) the ALJ's Social Security decision; (2) the November 13, 1984 reports and November 20, 1985 statement by Dr. Russell; (3) the March 11, 1985 report by Dr. Browning; (4) the November 18, 1985 report by Dr. Monroe; (5) the December 27, 1984 report by Dr. Darnell; (6) the November 5, 1986 report by Dr. Werth; and (7) the 1973 physical examination by Dr. Ellsasser.

Brumm, with the aid of his attorney, appealed these denials. The Board denied the appeals at its August 13, 1987 meeting and again at its November 12, 1987 meeting. In accordance with the Plan's terms, the Board has requested and Brumm has submitted to periodic examinations by Dr. Werth. To date these examinations indicate that Brumm is still disabled. Accordingly, the Board has continued Brumm's Level 2 T & P disability benefits.

## II. Discussion

### A. *Summary judgment standard*

█ Fed.R.Civ.P. 56(c) requires "the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden on the party moving for summary judgment "is only to demonstrate ... that the record does not disclose a genuine dispute on a material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir.1988). This burden is met once the moving party identifies portions of the record bearing out its assertions. *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir.1990).

█ Once the moving party has done so, a party opposing summary judgment may not rest merely upon the allegations in its pleadings. *Green v. St. Louis Housing Authority*, 911 F.2d 65, 68 (8th Cir.1990). The burden shifts to the non-moving party to go beyond his pleadings and by affidavit or by "depositions, answers to interrogatories, and admissions on file" show that there is a genuine issue of fact to be resolved at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

█ Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." *Haas v. Weiner*, 765 F.2d 123, 124 (8th Cir.1985), *cert. denied*, 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 338 (1985). In ruling on a motion for summary judgment, this Court must view all facts in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir.1989).

However, summary judgment is designed to remove factually unsubstantial cases from court dockets. *Smith v. Marcantonio*, 910 F.2d 500, 502–3 (8th Cir.1990). This Court must, therefore, grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

█ Summary judgment is an appropriate remedy for the Court to use when reviewing decisions to deny benefits under employee benefit plans. In this matter, there is no issue of material fact in dispute. Thus, the Court need only rule on the legal issues presented.

### B. *Standard of Review*

█ When a Plan covered by ERISA gives trustees discretionary authority to determine eligibility for benefits or to con-

strue the terms of the Plan, the court can reverse the trustees' decision to deny benefits only if that decision was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). This Plan, in § 8.4(A), specifically gives the Board the power to "define and amend the terms of the Plan and Trust, to construe the Plan and Trust and to reconcile inconsistencies therein." Such language is sufficient under *Bruch* to confer discretionary authority. *See Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 571 (8th Cir.1992) (Plan language stating "[t]he Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan" found sufficient to support an arbitrary and capricious standard of review); *cf. Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327, 1329 (8th Cir. 1989) (Plan language stating "[c]ompany benefits provided during your period of employment may be changed by the company without notice. If you have any questions or need additional clarification on benefits, please consult your personnel representative" found insufficient to support an arbitrary and capricious standard of review).

 Under the arbitrary and capricious standard, the Board's construction of § 5.1 and its denial of benefits will be upheld if reasonable. *Finley v. Special Agents Mut. Benefits Ass'n,* 957 F.2d 617, 621 (8th Cir.1992), *citing Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. at 110, 109 S.Ct. at 954. This standard is deferential, *see Cox,* 965 F.2d at 572, and the Eighth Circuit has recently articulated the factors this Court should consider when determining the reasonableness of the Board's interpretation of § 5.1. The Court must consider (1) whether the interpretation is consis-

tent with the goals of the Plan, (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent, (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute, (4) whether the Board has interpreted the words as issue consistently, and (5) whether the interpretation is contrary to the clear language of the Plan. *Finley,* 957 F.2d at 621.

### C. Board's interpretation of § 5.1

 Here, the Board could not agree on the interpretation of the language "a football injury" in § 5.1 as it related to Level 1 and Level 2 T & P benefits. The Board used the discretion given to it in §§ 8.4(A) and 8.7[1] of the Plan to refer the matter to an arbitrator. The Board adopted the arbitrator's interpretation. The Court finds this interpretation to be reasonable under *Finley.*

First, the interpretation is consistent with the goals of the Plan. The part of the Plan in question seeks to provide disability benefits for former football players. The Plan defines three different types of disability. The "Line of Duty" payments authorized by § 6 of the Plan are intended for players who receive a debilitating injury while playing football and who retire from football as a result of that injury. The T & P disability payments are intended for players who become disabled after they leave football. The Board's interpretation of § 5.1 is consistent with the Plan's provision for two types of T & P disability payments. Under the interpretation, Level 1 T & P benefits are available to a claimant who can trace his injury to a specific football incident and who is disabled within a reasonable time after leaving football. Payments under this level are higher than those under Level 2, where the player's

---

1. Section 8.7 provides in part:

By the affirmative vote of a majority [four (4)] of voting members, the Retirement Board shall have the power to act on matters related to interpretation or application of benefit, eligibility and other administrative provision of the Plan, Trust Agreement or By–Laws. Notwithstanding any provision to the contrary, by affir-

mative vote of three (3) voting members of the Retirement Board, any dispute between members related to interpretation or application or benefit, eligibility or other administrative provision of the Plan or Trust Agreement, ... may be submitted to arbitration under Article VII of the Collective Bargaining Agreement Dated December 11, 1982.

disability may arise from a number of injuries, not one identifiable football injury. Football is a physically grueling sport. Presumably, anyone who plays football for several years will suffer physical problems later in life which can be traced, at least in part, to the football career. The Plan contemplates this occurrence by providing for Level 2 benefits in the first place. However, under the Board's interpretation, the Plan differentiates between those whose disability can be traced to a single injury and those whose disability is the result of a football career's overall impact on the body, making the body more susceptible to injury later in life. Under plaintiff Brumm's interpretation of the Plan, any player who could trace any part of his disability to his football career should receive Level 1 T & P benefits. Awarding Level 1 benefits to a disability like Brumm's back pain, which could be traced in part to football but which was not totally caused by football, would override the Plan's policy of providing two levels of benefits. Almost every claimant would qualify for Level 1 T & P benefits, making Level 2 T & P benefits almost unnecessary. Such an interpretation could not be consistent with the goals of the Plan.

The Board's interpretation is reasonable under the other requirements of *Finley.* For the same reasons as stated above, the Board's interpretation gives consistent meaning to both parts of § 5.1. An interpretation such as that suggested by plaintiff would all but render Level 2 T & P benefits meaningless. The interpretation does not appear to conflict with ERISA. Because the Board accepted the findings of the arbitrator, it can be said that it has interpreted § 5.1 consistently in cases decided after the arbitration. Finally, the interpretation does not appear to be contrary to the clear language of the Plan. For Level 1 T & P benefits, section 5.1 refers to a disability caused by "a" football injury. The finding that the disability must have occurred from one identifiable injury is not inconsistent with the words "a football injury."

## D. *Board's decision to deny benefits*

In reviewing the Board's decision to initially deny Brumm benefits and then to award him Level 2 T & P benefits, this Court may review only the evidence before the Board when it made its final decision. *Oldenburger v. Central States Southeast and Southwest Areas Teamster Pension Fund,* 934 F.2d 171, 174 (8th Cir.1991). The Court must then determine whether substantial evidence supports the Board's decisions, and, if so, whether it has have made an erroneous decision on a matter of law. *See, Short v. Central States Southeast and Southwest Areas Teamster Pension Fund,* 729 F.2d 567, 571 (8th Cir. 1984).

The Board initially determined Brumm was not totally and permanently disabled from physical injuries because Dr. Darnell's December 27, 1984 report indicated that Brumm could perform sedentary work. Brumm did not submit any psychological reports in the initial claim. Based on the evidence the Board had before it for the initial claim, this Court finds that the April 2, 1985 decision to deny benefits was supported by substantial evidence. After this decision, Brumm obtained psychological evaluations in connection with his pending application for Social Security benefits. The Social Security ALJ found that Brumm was disabled from a combination of psychological and physical injuries.

After receiving the ALJ's favorable decision, Brumm appealed the Board's denial of benefits under the Plan. The Board asked Brumm to submit to a neutral psychological evaluation in connection with his request for benefits. The Plan provides for examination of the claimant by a neutral physician. Brumm was examined by Dr. Claude Werth, who reported on November 5, 1986 that Brumm was totally and permanently disabled from a combination of psychological and physical injuries. Based on the entire record, the Board voted to award Level 2 T & P disability benefits. Specifically, Brumm was awarded interim benefits on January 20, 1987. The Board voted on March 5, 1987 to continue the Level 2 benefits. Presumably, the Board considered

the arbitrator's definition for Level 1 T & P benefits in making the decision to continue benefits at Level 2, even though the January 20 letter was issued before the arbitrator handed down his opinion. Since both the ALJ and Dr. Werth found that Brumm's disability stemmed from a combination of psychological and physical problems, the Board concluded that the disability did not stem from "a" football injury and, consequently, they awarded Level 2 T & P benefits. This decision was supported by substantial evidence.

### E. *Plaintiff's arguments*

#### 1. De novo review

■■■ Plaintiff first argues that the Court should apply a *de novo* standard of review. Plaintiff argues that because the Board submitted the ambiguous language in § 5.1 to an arbitrator for interpretation, it never "invoked" its own power to interpret the Plan. For the reasons stated above, this argument is unpersuasive. Under the Plan, referral to arbitration requires three votes. When Board members vote on any matter, they use their discretion. The Board adopted the decision of the arbitrator. These actions constitute the Board's use of the discretion granted to it by the Plan, and they support a deferential standard of review.

Plaintiff also argues that the Court should apply a *de novo* standard of review because the Board has a conflict of interest. He argues that management trustees have a pecuniary conflict of interest because management funds the Plan. He argues that the player trustees have commitments to current players. Even if this conflict of interest did exist, plaintiff does not give the Court a reason why such a conflict supports *de novo* review.

#### 2. Waiver of reliance on § 5.1

■■■ Plaintiff argues that because his initial notice of denial of benefits referred to §§ 5.2 and 6.4, defendants waived their right to deny benefits later on the basis of § 5.1. This argument is unpersuasive. Plaintiff was initially denied benefits under §§ 5.2 and 6.4 because the Board deter-mined that he was not totally and permanently disabled. If the claimant is not disabled, then he cannot receive either Level 1 or Level 2 T & P benefits under § 5.1. In other words, § 5.1 does not even apply until the claimant meets § 5.2. After the Board determined that plaintiff was disabled under § 5.2, it awarded Level 2 benefits under § 5.1. The Board did not waive reliance on § 5.1.

#### 3. Board's decision was not based on substantial evidence

■■■ Plaintiff argues that substantial evidence did not support the Board's initial denial of benefits on April 2, 1985 because the Board failed to obtain the opinion of a vocational expert. Plaintiff argues that a vocational expert would have testified that there were no jobs Brumm could do with the impairments listed on Dr. Darnell's December 1984 physician report. Without vocational evidence, plaintiff argues, the Board's decision cannot be supported by substantial evidence. Plaintiff cites *Gunderson v. W.R. Grace & Co. Long Term Disability Plan*, 874 F.2d 496, 499 (8th Cir.1989). However, in *Gunderson*, the plaintiff had already been receiving benefits. The Plan then determined that Gunderson was no longer disabled, and it cut off his benefits. The Plan relied on the opinion of a medical doctor who found that Gunderson could perform sedentary work without retraining. The Court of Appeals held that in that case, the Plan should have obtained a vocational expert's opinion to determine whether Gunderson could perform those occupations. *Id.* This Court interprets the holding in *Gunderson* to have narrow application. The Court of Appeals did not hold that vocational experts are required in all benefit determinations. Even without vocational testimony, the Plan's decision is supported by substantial evidence. The Board relied on plaintiff's application for benefits and Dr. Darnell's report. In that report, Dr. Darnell found plaintiff's injuries to have resulted in no more than 30–49% partial bodily disability. Dr. Darnell also stated in that report that plaintiff could perform "any type of

employment that does not require him to sit, stand or walk in excess of 30–60 minutes without rest." Dr. Darnell was certainly qualified to give such a medical opinion, even if he was not a vocational expert. The Board relied on that opinion. Plaintiff submits a recent affidavit by Dr. Darnell where he opines that Brumm was really disabled in 1984. However, this Court may consider only the evidence before the Board in 1984. The Court concludes that the 1984 decision denying benefits was supported by substantial evidence.

### 4. Summary Plan Description

The Court has reviewed the Summary Plan Description and finds that it meets the minimum standards of 29 U.S.C. § 1022. Even if the Summary Plan Description was inadequate, plaintiff would only be entitled to a remand, not an award of benefits. A claimant who suffers because of a fiduciary's failure to comply with procedural requirements of ERISA is not entitled to a substantive remedy. *See Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). However, the Plan should make every effort to include the new interpretation generated by the Kagel arbitration in the Summary Plan Description.

### 5. Inadequate notice

Plaintiff alleges that the Board failed to inform him of the specific reasons for the April 1985 denial of benefits and failed to tell him what additional material was necessary for the perfection of his claim, both in violation of 29 C.F.R. § 2560.503-1(f) and Plan § 11.14. Plaintiff alleges that defendants' violations of these provisions are flagrant enough to constitute arbitrary and capricious action and give rise to personal liability on the part of the trustees for a full award of benefits, attorney fees and punitive damages. These arguments are misplaced. The notice provided by the Plan was adequate under ERISA. Again, even if the notice was inadequate, plaintiff would only be entitled to remand to the Plan for further notification in accordance with ERISA. *Blau, id.*

### 6. Board's decision was inconsistent with prior decisions

Plaintiff argues that previous benefit determinations demonstrate that his denial was arbitrary and capricious. Again, plaintiff's argument is inapposite. In all of the cases cited by plaintiff, the former players, who were awarded Level 1 T & P benefits, could trace their disability to a specific football injury. Plaintiff cannot trace his back problems to one specific injury. In addition, plaintiff was involved in a serious truck accident after his football career which may have contributed to his back problems. The other players mentioned had no such intervening causes for their disabilities.

### III. Conclusion

The Plan document gives the Retirement Board the discretion to decide all disability applications and to interpret any ambiguous terms. Because the Board has this discretion, the Court must defer to the Board's decision under an arbitrary and capricious standard of review. The Board's interpretation of § 5.1 of the Plan, acquired through arbitration, is reasonable. The Board's decision denying benefits is supported by substantial evidence. Plaintiff's other arguments are unpersuasive. Accordingly, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

For the above reasons, it is hereby

ORDERED that defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.