# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2563/09-2760

_____

| | | |
|---|---|---|
| First National Bank & Trust Company of Mountain Home, Special Administrator for The Estate of Debra Hulse Knighton, Deceased, | * * * * * | |
| Plaintiff - Appellee, | * * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Stonebridge Life Insurance Company; EMC National Life Company, | * * * | |
| Defendants, | * * | |
| Minnesota Life Insurance Company, | * * | |
| Defendant - Appellant, | * * | |
| Floyd Knighton, | * * | |
| Defendant. | * | |

_____

Submitted: February 11, 2010
Filed: August 30, 2010

_____

Before RILEY, Chief Judge,[1] SMITH and SHEPHERD, Circuit Judges.

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

_____

SMITH, Circuit Judge.

Floyd Knighton ("Floyd") shot and killed his wife, Debra Knighton ("Debra"), for whom he had purchased life insurance from Minnesota Life Insurance Company ("Minnesota Life") through his employer J.B. Hunt Transport Services, Inc. ("Hunt"). The administrator of Debra's estate, First National Bank & Trust Co., ("First National"), sought the policy proceeds but Minnesota Life refused, contending the company had no obligation to pay because Floyd had the only interest in the policy and had forfeited his right to any proceeds. The district court found that Debra had an interest in the policy and required Minnesota Life to pay the proceeds of the policy to First National.

The district court also entered an order finding that First National was entitled to recover $53,505 in attorneys' fees and $7,577.29 in costs from Minnesota Life. On appeal, Minnesota Life maintains that the district court committed two errors: (1) finding that First National had an interest in the insurance policy and was therefore entitled to the proceeds; (2) awarding First National $53,505 in attorneys' fees and $7,577.29 in costs. We affirm in part and reverse in part.

## I. *Background*

On or about January 1, 2002, First National issued Group Accidental Death and Dismemberment Policy Number 32501-G and Dependents Accidental Death and Dismemberment Policy Rider ("the Policy")[2] to Hunt. Hunt employed Floyd who participated in the group benefit by maintaining coverage under the Policy for himself and Debra.

_____

[2]The Policy is an Employee Retirement Security Act (ERISA) qualifying plan.

Floyd shot and killed Debra on or about May 23, 2004. The State of Arkansas initially criminally prosecuted Floyd for Debra's death but later nolle prossed the case. First National, as special administrator of the estate of Debra Knighton, commenced this lawsuit in the Circuit Court of Faulkner County, Arkansas, alleging that public policy prohibits Floyd, as the beneficiary who caused the death of the insured, from receiving death benefits under the Policy. First National also sought recovery of the proceeds under the Policy.

At trial, a jury found by a preponderance of the evidence that Floyd wrongfully and intentionally killed Debra. Consequently, Floyd was disqualified from receiving the death benefits under the Policy pursuant to the slayer's rule.[3] First National attempted to collect under the Policy, but Minnesota Life refused to pay. First National then exhausted all ERISA administrative remedies before seeking redress judicially.

On June 4, 2009, the district court entered an order finding that Debra had an interest in the policy and First National was entitled to the proceeds of the Policy on behalf of Debra's estate. The district court also entered a final judgment dismissing the case in its entirety.

---

[3]The slayer's rule is explained in Restatement (First) of Restitution § 189:

> (1) If the beneficiary of a life insurance policy murders the insured, he holds his interest under the policy upon a constructive trust for the estate of the insured.
> (2) If the beneficiary of a life insurance policy in which the insured has not reserved power to change the beneficiary is murdered by the insured, the latter holds his interest under the policy upon a constructive trust for the estate of the beneficiary.

On June 18, 2009, pursuant to Federal Rule of Civil Procedure 54(d)(1) and (2) First National filed a motion seeking an award of attorneys' fees in the amount of $58,787.50 and costs in the amount of $7,577.29 from Minnesota Life. On July 20, 2009, the district court entered an order finding that First National was entitled to recover $53,505 in attorneys' fees and $7,577.29 in costs from the Minnesota Life.

## II. *Discussion*
### A. *First National's Interest in the Policy*

On appeal, Minnesota Life argues that the district court erred in finding that First National, as administrator of Debra's estate, had an interest in the Policy. First, Minnesota Life contends that pursuant to the plain and unambiguous language of the Policy, it is relieved of all liability for payment of death benefits under the Policy to First National because no one other than Floyd possessed any interest in the Policy and the Policy named no contingent beneficiary to whom the funds are payable. Next, Minnesota Life contends that according to the Restatement (First) of Restitution § 189(1) comment (e)[4] when no one else has an interest in an insurance contract the insurer is relieved of all liability for payment of the proceeds. Next, Minnesota Life maintains that the Policy's unambiguous language does not authorize payment to the insured's estate upon disqualification or invalidation of the certificate holder. Finally, Minnesota Life contends that if we determine that it is necessary to look to state law

---

[4]Restatement (First) of Restitution § 189 cmt. (e) provides:

> The rule stated in this Section is applicable only where the insurer is under a liability upon the policy. Ordinarily the fact that the beneficiary murders the insured does not relieve the insurer of its liability. The insurer is, however, relieved of liability . . . (3) where no one except the beneficiary or one claiming through him has any interest in the policy.

for guidance, we will find, contrary to the district court's conclusion, that Restatement (First) of Restitution § 189(1) comment (e) is applicable under Arkansas law.

"Normal principles of contract interpretation apply to the construction of insurance policies. . . . Words and clauses are to be given their ordinary meaning and effect, and resort to extrinsic evidence is appropriate only to resolve ambiguities. . . . " *Enter. Tools, Inc. v. Export-Import Bank of United States*, 799 F.2d 437, 439 (8th Cir. 1986) (internal quotations and citations omitted). "Whether an insurance contract is ambiguous is a question of law." *Id.*

The parties agree that Floyd forfeited any entitlement to proceeds under the policy by causing his wife's death. Arkansas law plainly holds that "one who wrongfully kills another is not permitted to share in the other's estate, to collect insurance on his life, or otherwise to profit by the crime." *Middleton v. Lockhart*, 344 Ark. 572, 583 (2001). For reversal, Minnesota Life relies on a rider contained in the Policy which states "Except as provided under the section entitled 'Additional Benefits,' an accidental death or dismemberment benefit under this rider will be paid to the certificate holder, if living, otherwise to his or her estate." Read in insolation, the rider's plain language appears to support Minnesota Life's position that only Floyd had an interest in the policy. However, after reviewing the record, we find that Floyd was not the sole possessor of a policy interest.

The record indicates that Debra contributed directly to the Policy premium payments through her wages and indirectly through her assistance to Floyd as a wife and homemaker. Consequently, Debra acquired an interest in the Policy via her contributions as a breadwinner and homemaker. *See Draper's Estate v. C. I. R.*, 536 F.2d 944, 947–48 (1st Cir. 1976) (finding that insured wife's assistance as wife, mother, and homemaker, contributed in a very real sense to making payments on life insurance policies possible, and due in part to this, wife's estate had interest in the policies where husband-beneficiary murdered wife.). Accordingly, it appears that

Debra had an interest in the Policy, and thus, Restatement § 189(1) comment e(3) is inapplicable.

We find that because Debra had an interest in the Policy, payment to her estate is authorized due to Floyd's disqualification.

Finally, because we find § 189(1) comment e(3) inapplicable to this case, we do not address Minnesota Life's state law arguments.

### B. Attorneys' Fees and Costs

Minnesota Life contends that the district court, without providing a detailed analysis of its application of the *Westerhaus* factors to the facts of this case, *see Lawrence v. Westerhaus*, 749 F.2d 494, 495–96 (8th Cir. 1984) (per curiam), determined that all of the factors weighed in favor of First National when making its decision to award attorneys' fees. Minnesota Life maintains that this conclusion is unsupported by the facts and should be reversed.

Next, Minnesota Life maintains that First National is not entitled to recover all of the attorneys' fees and costs it incurred in proving Floyd's disqualification under the slayer's rule from Minnesota Life. Minnesota Life submits that First National was required to prove Floyd's disqualification in any event because two other parties interpled their insurance policy proceeds into the court registry. Minnesota Life contends that because neither party's proceeds could be distributed until the case against Floyd had been resolved, the other parties should be responsible for their pro rata share of the attorneys' fees and costs incurred by First National to prove its claims against Floyd. Finally, Minnesota Life contends that the district court erred in determining that it did not object to the costs award.

"Under § 502(g) of ERISA, a court may in its discretion award reasonable attorney fees and costs to the prevailing party." *Pendleton v. QuikTrip Corp.*, 567 F.3d

988, 994 (8th Cir. 2009) (citing 29 U.S.C. § 1132(g)). "ERISA's fee-shifting provision unambiguously gives the district court discretion to award attorney fees to 'either party.' 29 U.S.C. § 1132(g). In making this determination, a district court abuses its discretion when there is a lack of factual support for its decision, or when it fails to follow applicable law." *Martin v. Arkansas Blue Cross and Blue Shield*, 299 F.3d 966, 969 (8th Cir. 2002).

We disagree with Minnesota Life's argument that the district court erred in analyzing the *Westerhaus* factors. *Westerhaus* provides five nonexclusive factors that district courts are to consider when deciding whether to award attorneys' fees under ERISA. *Westerhaus* directs district courts to consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question [sic] regarding ERISA itself; and (5) the relative merits of the parties' positions.

749 F.2d at 496 (internal quotations and citation omitted). Although the district court may not have provided a detailed analysis of its application of the *Westerhaus* factors, "[t]he bottom line is, district courts are not obligated to regurgitate, rote, the *Westerhaus* factors." *Martin*, 299 F.3d at 972. The district court recited the factors and found that all five factors weighed in favor of First National. The court noted that Minnesota Life chose to litigate its obligation to pay on legal theories contrary to Arkansas law rather than interplead the proceeds. Moreover, the district court's decision did not lack factual support, nor did it fail to follow applicable law. *Id.* at 969. We therefore find no error in the district court's analysis.

Nevertheless, we agree with Minnesota Life's contention that absent its presence in the case, First National was still required to establish Floyd's disqualification in order to recover other insurance policy proceeds. Accordingly, we remand for determination of Minnesota Life's share of the attorneys' fees and costs, if any, attributable to Floyd's disqualification proceedings. We affirm the remainder of the attorneys' fees and costs award.

Because we remand for recalculation of the attorneys' fees and costs award on the previously stated grounds, we do not reach Minnesota Life's argument that the district court erred in determining that it did not object to the costs award.

### III. *Conclusion*

The judgment of the district court is affirmed in part and reversed in part. We remand for proceedings consistent with this opinion.

_____