# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 10-3353/11-1300

_____

Dawn McClelland,           *

           *

     Appellee,        *

           *    Appeal from the United States

    v.                   *    District Court for the District

           *    of Minnesota.

Life Insurance Company    *

of North America,        *

           *

     Appellant.       *

_____

Submitted: October 19, 2011
Filed: May 24, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Life Insurance Company of North America (LINA) appeals the district court's[1] ruling that LINA abused its discretion in denying death benefits to Dawn McClelland based upon her husband Anthony's life insurance policy. LINA also appeals the district court's award of attorney fees. We affirm the district court's decision on the award of benefits, but remand for further proceedings with regard to the attorney fee award.

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

## I. BACKGROUND

Anthony worked as a machinist for Graco, and through Graco had insurance coverage for accidental death benefits. The plan was an Employee Retirement Income Security Act ("ERISA," 29 U.S.C. §§ 1001 et seq.) qualified employee benefit plan. The plan provided for $250,000 of coverage for "Loss of Life," and a covered accident was defined in the plan as:

> A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
>
> 1. occurs while the Covered Person is insured under this Policy;
> 2. is not contributed to by disease, Sickness, mental or bodily infirmity;
> 3. is not otherwise excluded under the terms of this Policy.

On October 26, 2007, a Friday, Dawn got off work at 6:00 p.m. and went home. That evening she and Anthony ordered pizza, and Anthony consumed a few mixed drinks but Dawn did not think that he was intoxicated. The next morning, Saturday, October 27, Dawn got ready for work. Anthony showed her some family pictures on the internet, and told her he was going to ride his motorcycle because it was going to be a nice day. He also told her that he intended to do yard work with their son and tend to his garden that afternoon. The couple's fifteen-year-old daughter reported that Anthony left on his motorcycle around 9:00 a.m. Anthony was headed toward a coworker's house in a nearby suburb, and apparently stopped at a café and also spoke to a county sheriff to get directions on his way. Anthony stayed at the coworker's house for about a half hour, did not have any alcohol, and the friend reported that Anthony did not seem intoxicated. Anthony next drove to his brother-in-law's house in another nearby town. Anthony stayed there for about a half hour and, according to the brother-in-law, was in a good mood and did not seem any louder than normal.

Anthony's nephew reported that during the visit, Anthony did not smell of alcohol, was not slurring his speech, and walked normally. Both the coworker and the brother-in-law felt that Anthony's purpose in visiting was to show them the Harley Davidson motorcycle that he had purchased earlier in the year.

Shortly after leaving his brother-in-law's house, Anthony was in a fatal traffic accident. Witnesses indicated that he seemed to be playing "follow the leader" with another motorcycle and possibly a Saturn vehicle by weaving in and out of traffic for approximately six miles. At the time of the accident, Anthony was not wearing a helmet, and witnesses estimated the speed of the weaving vehicles to be, at times, around 90 miles per hour. Witnesses noted that there was a curve in the road where the accident occurred, and that there was a "soft" or gravel shoulder at the curve. One of the eyewitnesses to the accident opined that Anthony simply "couldn't make the curve." The same witness noted that the driver of the Saturn also nearly lost control at the same curve. Toxicology reports indicated that Anthony's blood alcohol content ("BAC") was over .20.

Anthony had two prior driving under the influence ("DUI") convictions, although the most recent DUI occurred ten years earlier in 1997. He was a motorcycle enthusiast and had even built his own motorcycle from parts. Anthony had been to the Sturgis, South Dakota, motorcycle rally earlier in 2007, and planned to return in a few years. Also, he and Dawn were planning a trip to Las Vegas in December 2007 to celebrate Dawn's birthday.

When Dawn submitted a claim for accidental death benefits, LINA denied benefits, based upon its position that Anthony's death was not a "covered accident" because it was foreseeable due to his intoxicated state at the time of the crash. Dawn appealed the denial, but LINA affirmed the denial of benefits. Dawn filed this ERISA action challenging the denial, and LINA removed the case to district court.

Following the parties' cross-motions for summary judgment, the district court remanded the matter to the insurer for further proceedings, finding that LINA had employed an unreasonable definition of the term "accident" in denying coverage. The court ordered LINA to determine on remand whether Anthony's death resulted from an "accident" as defined by Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1088 (1st Cir. 1990).[2] Upon remand, both parties submitted expert reports, and Dawn submitted affidavits regarding Anthony's behavior on the morning in question. Following consideration of these materials, and heavily relying upon the report of its expert, Dr. Berman, LINA again decided Anthony's death was not a covered accident. Dawn again appealed this determination to the district court. Upon cross-motions for summary judgment, the district court ruled in favor of Dawn, finding that LINA abused its discretion by applying an unreasonable interpretation of the term "accident" as defined by Wickman. The court found that LINA did not reasonably analyze Anthony's subjective expectations on the morning of the accident. The district court also awarded attorney fees, in the amount of $134,088.50, and $26,384.11 in prejudgment interest. LINA appeals, arguing its decision to deny

---

[2]Under Wickman, an event is an accident if the decedent did not subjectively expect to suffer "an injury similar in type or kind to that suffered" and the suppositions underlying that expectation were reasonable. 908 F.2d at 1088. "The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." Id. If the evidence is insufficient to determine the decedent's subjective expectation, the question is then whether "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." Id. We acknowledge that the standard of review of the plan administrator's decision in Wickman was de novo, and here it is an abuse of discretion. However, we use the Wickman test as a framework for discerning the meaning of "accident," not as a comparison case for upholding the award or denial of benefits. In fact, in Wickman, the court upheld the denial of benefits because the evidence indicated the insured knew death was highly likely to occur when he climbed over and hung by one arm from a bridge guardrail. Id. at 1089.

benefits was not an abuse of discretion, and that attorney fees were either unwarranted or excessive. The amount of the interest award was not appealed.

## II.    DISCUSSION

### A.    Standard of Review

We review the district court's adjudication of this claim de novo, applying the same standard of review to the plan administrator's decision as the district court. Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir.), cert. denied, 131 S. Ct. 648 (2010). When an ERISA-qualified employee benefit plan grants the plan administrator the discretion to determine whether a claimant is eligible for benefits, review of the administrator's decision is for an abuse of discretion. Carrow v. Standard Ins. Co., 664 F.3d 1254, 1258 (8th Cir. 2012). In reviewing LINA's interpretation of its plan language, we generally examine the following factors: (1) whether the interpretation is consistent with the goals of the plan; (2) whether it renders any language in the plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of ERISA; (4) whether LINA has interpreted the provisions at issue here consistently; and (5) whether the interpretation is contrary to the clear language of the plan. Finley v. Special Agents Mut. Benefit Ass'n, 957 F.2d 617, 621 (8th Cir. 1992). However, at bottom, a plan administrator's decision is an abuse of discretion if it is not supported by substantial evidence. Wrenn v. Principal Life Ins. Co., 636 F.3d 921, 925 (8th Cir. 2011). Because a conflict of interest exists due to the fact that LINA is both the decision-maker and the insurer, we give that conflict some weight in the abuse-of-discretion calculation. Carrow, 664 F.3d at 1258-59.

We review the district court's award of attorney fees for an abuse of discretion and will accordingly reverse if there is a lack of factual support for the fee decision

-5-

or if the district court fails to follow applicable law. First Nat'l Bank & Trust Co. of Mountain Home v. Stonebridge Life Ins. Co., 619 F.3d 951, 955-56 (8th Cir. 2010).

## B.    Denial of Benefits

At the outset, we address the use of Wickman as the standard for defining "accident" in this case because curiously, this became a contested issue at oral argument. LINA first argued that its denial of benefits satisfied Wickman in its memorandum in support of its initial motion for summary judgment *prior* to the district court's remand ordering it to apply Wickman. This memorandum was filed June 16, 2009. Dawn had also filed a memorandum in support of a motion for summary judgment arguing the Wickman standard on June 1, 2009. And, as we read LINA's June 16 memorandum, it is not a refutation of Dawn's argument that Wickman should be used as the framework for the definition of accident. Instead, LINA argued that its decision satisfied the Wickman framework, and LINA continues this argument in its briefing to us. LINA did not contest the applicability of Wickman before the district court nor in briefing to this court. Thus, prior to oral argument, there had been no dispute between the parties about the applicability or use of the Wickman framework. Indeed LINA's counsel stated at oral argument that the definition of "accident" in the policy is substantially the same as the Wickman definition of accident.[3] It was only during oral argument when LINA, in response to

_____

[3]This statement is somewhat peculiar, as the plan arguably defines accident to exclude any event that is "foreseeable," a far broader standard than an event that is reasonably viewed as "highly likely to occur." LINA likely distances itself from the "foreseeable" notion because, as identified by the en banc court in King v. Hartford Life and Accident Ins. Co, 414 F.3d 994 (8th Cir. 2005) (en banc) an insurance company's assertion that a "foreseeable" occurrence is not covered by an accidental death policy would be a dicey proposition. See id. at 1002. As the court noted,

>    a "reasonably foreseeable" standard is quite broad; if all "reasonably
>    foreseeable" injuries are excluded from coverage, then the definition of

questions from the court, began to distance itself somewhat from <u>Wickman</u>. So, although LINA initially embraced and then subsequently distanced itself from <u>Wickman</u> at oral argument, we proceed under the <u>Wickman</u> definition of accident as briefed, and in large part, argued, by both parties.

Following the district court's remand order, LINA received a report from its expert, Dr. Berman, as well as Dawn's expert report and her affidavits concerning the activities of Anthony on the day in question. Both sides presented statistics regarding drunk driving fatalities. In denying benefits, however, LINA relied upon Dr. Berman's report in concluding that Anthony's death was not accidental. Dr. Berman did not interview anyone who had interacted with Anthony on that day, and instead opined generally on the characteristics of a person of Anthony's age and gender who consumes alcohol and drives at a high rate of speed. Dr. Berman concluded that such a person would expect that death was highly likely to occur in Anthony's situation. Given that the <u>Wickman</u> test requires, if possible, a subjective look at the insured's state of mind, LINA abused its discretion in so deciding.

---

accident may frustrate the legitimate expectations of plan participants, for insurance presumably is acquired to protect against injuries that are in some sense foreseeable. If Hartford's definition of "accidental bodily injury" were so narrow that it could eliminate many injuries that an average plan participant would expect to be covered based on the plain language of the plan, then there would be a question whether it conflicts with the statutory requirement that a plan be "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a).

<u>Id.</u> The <u>King</u> court did not decide whether the insurance policy violated § 1022 because the insurance company had not only acquiesced in the use of <u>Wickman</u> to define accident, it had embraced <u>Wickman</u>. <u>Id.</u> Here, as discussed, though there is some evidence of LINA's embrace of <u>Wickman</u>, there is at the very least evidence that it has acquiesced in the district court's command to apply it.

To properly apply the Wickman test, LINA should have taken into account Anthony's characteristics on the day of the accident, rather than relying solely upon its expert's rather categorical conclusion that those who drink and drive should reasonably expect to be killed. On October 27 in particular, Anthony had plans to complete yard work in the afternoon and the uncontroverted[4] evidence was that he showed no obvious signs of intoxication in the hours leading up to his accident. Based on the evidence before LINA, Anthony's behavior on the morning of October 27 was normal while visiting with several people, including a sheriff, and he had no problems with balance or orientation. He was in a good mood and joked with the people that he had visited. The objective evidence that Anthony was traveling at a high rate of speed with an elevated blood alcohol level does not alter this subjective evidence. In fact, the same witnesses who described the speed of the "follow the leader" vehicles noted that the vehicles had been deftly changing lanes for several miles. There was overwhelming evidence that subjectively, Anthony, an experienced motorcyclist, intended to ride his Harley to visit friends and then return safely home to do yard work. There was not even a scintilla of evidence that Anthony thought his death was highly likely to occur.

LINA used Dr. Berman's report to decide what Anthony's expectations must have been on the day of the accident. This amounted to a faulty objective evaluation of the evidence, ignoring the subjective components of the Wickman test that directs LINA to first determine the expectations of the insured, based upon the insured's personal characteristics and experiences. Wickman, 908 F.2d at 1088. Only when the evidence is insufficient to accurately determine the insured's subjective expectations at the time of the accident should the objective analysis be so heavily relied upon. Id. Here, subjective evidence was readily available, and all of the

---

[4]LINA apparently did not gather evidence about Anthony's behavior from anyone who personally interacted with him on the morning of the accident.

subjective facts, and even some of the objective ones, point to the fact that Anthony reasonably did not think it highly likely that he would die on October 27, 2007.

LINA argues that certain of Anthony's subjective characteristics–his age, gender and criminal history–were adequately taken into account. For instance, LINA argues that since Anthony had been convicted of DUI, he received mandatory counseling about the dangers and consequences of driving while intoxicated and therefore should have reasonably expected to die on October 27. On the other hand, LINA distances itself from the idea that someone who regularly, or at least in the past, has driven after drinking would subjectively believe that death is highly *unlikely* to occur in this situation. LINA also argues that while Anthony may have believed death was unlikely to occur while he drove his motorcycle at speeds in excess of 90 miles per hour with a BAC of .203, this belief was unreasonable. However, even the objective facts indicate that Anthony had been successfully performing this feat for a distance of several miles, weaving in and out of traffic along with another motorcycle and a Saturn vehicle. It was not until he[5] failed to negotiate a curve, slipped onto the gravel shoulder, and flipped several times did Anthony become unable to successfully operate the motorcycle on the morning of October 27, 2007.

In the final analysis, and especially considering the conflict of interest, we cannot escape the conclusion that Anthony's fatal motorcycle accident was just that, an accident. Because there were no applicable policy exclusions, see River v. Edward D. Jones Co., 646 F.3d 1029, 1031 (8th Cir. 2011) (for an example of an ERISA qualified plan which wrote an intoxication exception into its plan), it was covered within the meaning of LINA's policy. Though we acknowledge that our review is deferential, we find that LINA committed an abuse of discretion in denying benefits because its interpretation is contrary to the language of the plan that it will cover "loss

---

[5]The Saturn also nearly failed to negotiate the same curve, according to a witness.

-9-

of life" based upon an "accident" and because substantial evidence does not support its decision.

## C.    Attorney Fees

Upon Dawn's motion, the district court also awarded attorney fees, in the amount of $134,088.50, and $26,384.11 in prejudgment interest. In reviewing the district court's decision to award fees in ERISA cases, we, and the district court, are guided by the five factors set forth in Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984) (per curiam)–(1) degree of bad faith; (2) ability to pay; (3) deterrence; (4) significance of the legal question; and (5) relative merits of the positions. In analyzing the factors, the district court found no bad faith on the part of LINA, but did find, based upon factor 3, that an award of fees would deter LINA from violating ERISA in the future. And the court found that Dawn's lawsuit would benefit others hurt by LINA's incorrect application of the definition of "accident." The relative merits also fell on the side of fees, according to the district court, as LINA had allegedly been applying a per se rule against awarding benefits in drunk driving cases. Too, the court found that LINA had the ability to pay a reasonable attorney fee. The court noted that this was not a "simple ERISA case" and that the parties had "submitted two separate pairs of cross-motions for summary judgment over a period of several years." The court also pointed to the fact that during the remand, both parties employed experts and supplemented the factual record. Accordingly, the court found that the time expenditure claimed by counsel, in excess of 500 hours, was not unreasonable. Because LINA had not challenged the rate charged, the district court multiplied the number of hours times the reasonable rate to come up with the lodestar fee it awarded. Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983) (holding that the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate is the appropriate method for determining the attorney fee award in most cases). On appeal, LINA challenges both the decision to award fees and the number of hours purportedly expended resulting in a higher than necessary fee.

We find that for the reasons advanced by the district court in its fee order, it did not abuse its discretion in deciding to award fees based upon the <u>Westerhaus</u> factors. The court's decision was factually supported and followed applicable law. <u>Stonebridge</u>, 619 F.3d at 956. However, we agree with LINA that the number of hours expended is clearly excessive, especially considering the policy limit of $250,000. <u>Griffin v. Jim Jamison, Inc.</u>, 188 F.3d 996, 997-98 (8th Cir. 1999) (holding that while the district court should not apply proportionality rules, it should take into account the amount of recovery and results obtained by the lawsuit). Although we acknowledge that the case involved a remand, we find that over 500 hours was more than reasonably necessary. We find that the total fee awarded should be $85,000, and remand to the district court to enter an award in that amount. The prejudgment interest award is affirmed.

## III. CONCLUSION

"Generally, insureds purchase accident insurance for the very purpose of obtaining protection from their own miscalculations and misjudgments." <u>Wickman</u>, 908 F.2d at 1088. Anthony misjudged a curve in the road and, perhaps, his ability to operate a motorcycle after consuming alcohol. LINA's attempts to define this accident as something else are unavailing and an abuse of its discretion. We affirm the district court's judgment in this regard, but reverse and remand to the district court for further proceedings with regard to the attorney fees.

GRUENDER, Circuit Judge, concurring.

The application of the definition of "accident" from *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990), is appropriate in this case, but only because LINA failed to appeal what I view as the district court's incorrect order remanding the case for reassessment under that definition. Although I believe that the Court is ultimately correct in affirming the judgment of the district court on the

basis of LINA's flawed application of *Wickman*, I disagree with the Court's description of how *Wickman* came to be applied here, and therefore I write separately.

While LINA did, as the Court states, "argue[] that its denial of benefits satisfied *Wickman* in its memorandum in support of its initial motion for summary judgment" prior to the district court's remand order, *ante* at 6, LINA never stated that the *Wickman* definition of "accident" was the definition that it applied in its own original decision to deny benefits. Instead, LINA recited the facts from many cases finding that alcohol-related vehicular deaths were not "accidents," noted that many of these cases relied on the plaintiff's favored *Wickman* definition, and then concluded:

> Indeed, this case presents facts that are even more compelling than those in the cases cited above. In many of these cases . . . the courts were struggling to determine the definition of the term "accident" because it was not defined in the applicable policies. Here, as detailed previously, LINA's policy expressly defines "accident" as an "unforeseeable" event, which removes Mr. McClelland's drunk driving crash from the scope of the term, regardless of the standard of review.

I believe that the Court errs in transforming an insurer's mere claim that its decision, however reached, satisfies a well-known standard into a concession that its decision is based solely on that standard. Nevertheless, I concur in the judgment because LINA did not raise as an issue on appeal the district court's earlier incorrect determination in its remand order that LINA had argued that its decision was made pursuant to *Wickman*. LINA thus waived any argument that it was not bound to apply the *Wickman* definition of "accident," and I agree with the Court that LINA's post-remand analysis under *Wickman* was premised on an unreasonable abandonment of *Wickman*'s subjective test in favor of its objective test.

_____

-12-