# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-2496
_____

Damon Zaeske

*Plaintiff - Appellee*,

v.

Liberty Life Assurance Company of Boston

*Defendant - Appellant*.
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: March 2, 2018
Filed: August 23, 2018
_____

Before COLLOTON, BOWMAN, and BENTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

This appeal arises from Liberty Life Assurance Company's denial of Damon Zaeske's application for long-term disability benefits under his employer's welfare benefit plan. After Zaeske sued under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), the district court ruled that Liberty Life's denial was an abuse of discretion and ordered the company to pay Zaeske benefits and

attorney's fees. Liberty Life appeals, and we conclude that its decision was not an abuse of discretion, so we reverse the judgment.

## I.

Zaeske worked at Walmart as a project manager. On April 4, 2014, he stopped working due to chronic back pain. As a Walmart employee, Zaeske was a member of Walmart's Associates' Health and Welfare Plan, a plan insured and administered by Liberty Life. After his last day of work, Zaeske applied to Liberty Life as administrator for long-term disability benefits under the plan.

To evaluate Zaeske's claim, Liberty Life obtained medical records from his treating physicians—Dr. Garrett, Dr. Potts, and Dr. Nunley. The administrator then submitted those records to Dr. Shannon, an independent consulting physician. Dr. Shannon gave her assessment to Liberty Life on May 30, 2014.

Based on Zaeske's medical records, including the results of magnetic resonance imaging in 2013, Dr. Shannon diagnosed Zaeske with chronic low back pain and recently increased back and leg pain due to disc protrusion with severe stenosis. From this diagnosis, Dr. Shannon concluded that Zaeske's current estimated work capacity was limited to sedentary work, rather than the light work required by his job at Walmart.

Dr. Shannon explained, however, that the usual recovery time for Zaeske's primary impairing condition was three to six months. In a later portion of her report, when asked to address the estimated duration of Zaeske's restrictions and limitations, Dr. Shannon stated: "An additional 3 months and depe[n]dent on response to treatment." Dr. Shannon suggested that Liberty Life continue to obtain updated office notes from Zaeske's treating physicians for ongoing review of his condition.

Liberty Life then approved Zaeske's claim on June 4, subject to periodic evaluation of his disability.

Zaeske began receiving benefits on July 6. As part of its periodic evaluation, Liberty Life sent requests for updated medical records to Zaeske's treating physicians on October 12 and October 27. Although Liberty Life received Dr. Potts's responses to a generic restrictions form and an office visit summary from a new treating physician, Dr. Randolph, the administrator did not receive a response from Dr. Nunley or updated medical records from any of the physicians. On November 14, Liberty Life notified Zaeske that it had suspended his benefits and that Liberty Life would close his claim if it did not receive updated records by December 11. On December 12, Liberty Life had not received any updated records and thus denied Zaeske further benefits.

On December 15, Liberty Life received updated medical records from Dr. Potts, Dr. Nunley, and Dr. Randolph for May 9 to November 7, 2014. The same day, Liberty Life sent the records to Dr. Glassman, a second independent consulting physician, for his assessment. Dr. Glassman attempted to contact each of Zaeske's treating physicians three times, but received no response.

In a report dated December 23, Dr. Glassman observed that Zaeske had been diagnosed with lumbar degenerative disc disease and bulging discs, and that he suffered from spinal stenosis. Dr. Glassman noted that there was no evidence of any side effects from the medication that Zaeske used to control his pain. From Zaeske's records, Dr. Glassman concluded that the only diagnosis causing his impairment was lumbar degenerative disc disease and back pain. Dr. Glassman then opined that "a gentleman who is 51 years old with a history of lumbar degenerative disc disease, but no evidence of any disc herniation" could perform full-time activities throughout an eight-hour work day, five days a week. Liberty Life concluded, based on Dr.

Glassman's assessment, that Zaeske was not entitled to long-term disability benefits and denied his claim.

On February 20, 2015, Zaeske appealed the denial and submitted a number of documents. These included treatment notes from Dr. Potts dated December 29, 2014, in which she found that Zaeske was "[p]ositive for back pain," but did not address whether the pain was uncontrolled. In a letter dated February 10, 2015, Dr. Potts stated that "[Zaeske] is unable to work due to severe back pain and medication that causes drowsiness and inability to concentrate." But Liberty Life declined to change its determination, because it had received no additional medical evidence—such as physical examinations or diagnostic testing—that would alter the previous medical assessment.

Zaeske then submitted additional information to Liberty Life, including the results of magnetic resonance imaging performed on January 13, 2015, and another treatment note from Dr. Potts in March 2015 stating that Zaeske was "[p]ositive for back pain." On May 12, Liberty Life referred all original and additional information to Dr. Reecer, a third independent consulting physician. After Dr. Potts failed to respond to Dr. Reecer's four attempts to contact her, Dr. Reecer gave his assessment on May 28. In his report, Dr. Reecer observed that the MRI from January 2015 revealed that Zaeske had intervertebral disc disease, severe stenosis, and a herniated disc. Dr. Reecer also observed that the records did not show any side effects from Zaeske's current medication.

Based on the MRI and Zaeske's other medical records, Dr. Reecer concluded that Zaeske had moderate lumbar degenerative disc disease, stenosis, and a herniated disc. Even with these conditions, however, Dr. Reecer opined that Zaeske could sit and walk for one-hour intervals, stand for thirty-minute intervals, and occasionally climb, crawl, squat, kneel, stoop, and crouch. Ultimately, Dr. Reecer determined that

Zaeske could work an eight-hour shift, forty hours a week. Relying on Dr. Reecer's assessment, Liberty Life denied Zaeske's claim on June 1.

## II.

After Liberty Life's final denial, Zaeske sought judicial review under ERISA, 29 U.S.C. § 1132(a)(1)(B). The statute gives a plan participant a cause of action "to recover benefits due to him under the terms of his plan." The district court concluded that Liberty Life's decision to terminate Zaeske's disability benefits was not supported by substantial evidence and was therefore an abuse of discretion. The district court's conclusion rested on its determination that the opinions of Dr. Glassman and Dr. Reecer were unreliable. The court then ordered Liberty Life to pay Zaeske for his past-due benefits and his attorney's fees.

We review the district court's decision *de novo*. *McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 759 (8th Cir. 2012). Where, as here, an ERISA-qualified plan "grants the plan administrator the discretion to determine whether a claimant is eligible for benefits, review of the administrator's decision is for an abuse of discretion." *Id.*; *see Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 828 (2003). A plan administrator's decision is not an abuse of discretion if it is reasonable—that is, if the decision is supported by substantial evidence. *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 989 (8th Cir. 2014). In this case, whether Liberty Life's denials are supported by substantial evidence turns on whether it was permissible to rely on the opinions of Dr. Glassman and Dr. Reecer.

The district court found that Dr. Glassman's opinion was unreliable because he "ignored verified proof in the medical file that Mr. Zaeske suffered from disc protrusion, herniation, and lumbar stenosis." Dr. Glassman's resulting "incorrect diagnosis," according to the district court, "led Dr. Glassman to assume that Mr. Zaeske was less impaired than he actually was—and contributed to a domino-effect

of faulty assumptions and unsupported recommendations." The district court then faulted Dr. Glassman for not acknowledging that Zaeske's pain was uncontrolled or addressing how uncontrolled pain would affect Zaeske's ability to work. The district court further discounted Dr. Glassman's report because it did not mention any side effects from Zaeske's medication despite the fact that Dr. Potts had noted side effects in the past. The district court ultimately concluded that "there is no question that Dr. Glassman's findings and recommendations were unreliable, which means that Liberty Life's complete reliance on those findings was unreasonable and constituted an abuse of its discretion as Plan Administrator."

The district court likewise found Dr. Reecer's opinion unreasonable and unsupported by the medical evidence. Although the district court acknowledged that Dr. Reecer recognized that Zaeske suffered from degenerative disc disease, a herniated disc, and chronic pain, the court rejected Dr. Reecer's ultimate conclusion because "he omitted from his report any consideration of whether Mr. Zaeske's chronic pain would impact his ability to function in the workplace." Similarly, the district court found inexplicable Dr. Reecer's conclusion that Zaeske did not experience any side effects from his current medication regimen. The district court also determined that Dr. Reecer's report was unsupported by the record because it contradicted Dr. Shannon's earlier report based on the same diagnosis. The court reasoned that there was no evidence that Zaeske's condition had improved since Dr. Shannon's report and that, if anything, intervening records indicated that his condition had worsened or had remained the same. Consequently, the district court concluded that Liberty Life erred by relying on Dr. Reecer's recommendation when it denied Zaeske's claim.

We respectfully disagree and conclude that the opinions of Dr. Glassman and Dr. Reecer were sufficiently reliable to provide a reasonable basis for Liberty Life's denials of Zaeske's claim. While another interpretation of Zaeske's medical records could support his eligibility for benefits, the assessments of Dr. Glassman and Dr.

Reecer were not outside the range of reasonableness, and it was not an abuse of discretion for Liberty Life to rely on them.

Dr. Glassman's opinion resulted from a reasonable interpretation of Zaeske's medical records. In our view, Dr. Glassman did not ignore "verified proof in the medical file that Mr. Zaeske suffered from disc protrusion, herniation, and lumbar stenosis." In his report, Dr. Glassman noted that some of Zaeske's medical records reported "bulging discs" and "spinal stenosis." Liberty Life reasonably could have understood Dr. Glassman's final diagnosis—lumbar degenerative disc disease—as an umbrella term that encompassed disc protrusion and lumbar stenosis. And Dr. Glassman did not ignore evidence in Zaeske's medical records that he suffered from disc herniation. The first evidence of herniation came from the MRI in January 2015, the results of which were not available until three weeks after Dr. Glassman gave his assessment. Dr. Glassman's opinion, therefore, did not derive from a clearly incorrect diagnosis in light of the records available to him.

Dr. Glassman did not err by declining to discuss the effects of uncontrolled back pain on Zaeske's ability to work, because Zaeske's medical records did not dictate a conclusion that he was suffering uncontrolled back pain at the time of Dr. Glassman's assessment. Based on an examination on June 10, 2014, Dr. Potts reported that Zaeske suffered uncontrolled back pain and could not work while taking medications. Similarly, Dr. Nunley reported on June 17, 2014, that Zaeske suffered from constant low back pain and that attempts to alleviate the pain through lumbar medical branch blocks and a transforaminal epidural steroid injections had not resulted in long-term relief. But later treatment notes from Dr. Potts and Dr. Nunley do not report uncontrolled pain. On September 12, Dr. Nunley noted that Zaeske continued to have back pain, and recommended a caudal epidural steroid injection. After Dr. Nunley performed the recommended procedure on October 7, there is no record that the injection failed to offer relief or that Zaeske continued to experience "constant" or "uncontrolled" pain. Likewise, at an October 2 visit, Dr. Potts recorded

that she examined Zaeske "for follow up on chronic medical problems including . . . back pain," but this time did not describe the pain as "uncontrolled." Without further clarification from physicians who failed to respond to inquiries, it was reasonable for Dr. Glassman and Liberty Life to conclude from these updated records that pain medication likely offered Zaeske some relief, and that his back pain was not uncontrolled or constant as of December 23, 2014.

Dr. Glassman's conclusion that Zaeske did not appear to suffer any side effects from his prescribed medication is also supported by the record. The district court cited Dr. Potts for the proposition that Zaeske's medication caused "somnolence, decreased concentration, confusion, an inability to drive, and an inability to make decisions." But the cited report is dated November 15, 2013—over a year before Dr. Glassman made his assessment. Later treatment notes from Dr. Potts in June and October 2014 report that Zaeske suffered no side effects from his medication. In light of the more recent treatment notes, Dr. Glassman and Liberty Life reasonably could conclude that Zaeske was not suffering side effects from his medication in December 2014 that would preclude his ability to work.

Dr. Reecer's opinion also rested on a reasonable interpretation of Zaeske's medical records. The district court faulted Dr. Reecer for not considering whether Zaeske's chronic pain would affect his ability to function in the workplace, and thought it inexplicable that Dr. Reecer said that Zaeske suffered no side effects from pain medication. The medical records, however, support Dr. Reecer's conclusion about side effects. After Dr. Glassman's assessment, two new documents discussed the issue: Dr. Potts's treatment notes from December 29, 2014, and a letter from Dr. Potts dated February 10, 2015. Consistent with Dr. Potts's treatment notes from June and October 2014, the December 2014 treatment notes reported that Zaeske had no side effects from his medications. Dr. Potts's February 2015 letter stated that Zaeske was unable to work due to "medication that causes drowsiness and inability to concentrate." But Dr. Reecer and Liberty Life reasonably could discount Dr. Potts's

letter in light of the three treatment notes from the previous eight months that directly contradicted the letter. Dr. Reecer acknowledged that Zaeske had been diagnosed with chronic pain and discussed Zaeske's medication regimen. It was not an abuse of discretion for Liberty to accept Dr. Reecer's apparent view that back pain treated with medication would not preclude Zaeske from working.

Tension between Dr. Reecer's assessment in May 2015 and Dr. Shannon's opinion from May 2014 does not make it impermissible for Liberty Life to rely on Dr. Reecer. For one thing, the two opinions are not irreconcilable. Dr. Shannon estimated that Zaeske would be able to perform the light work required by his position at Walmart within an additional three months, depending on his response to treatment. A year later, Dr. Reecer concluded that Zaeske had a functional capacity that Liberty Life determined satisfied the minimum requirements of Zaeske's position. Although the underlying diagnosis did not change for the better, Zaeske's symptoms may have improved during that time, either naturally or as a result of medication. And as already explained, Zaeske's medical records permit that conclusion.

But even if the opinions of Dr. Shannon and Dr. Reecer are inconsistent, Liberty Life was not required to reject Dr. Reecer's opinion. As a general rule, a plan administrator has discretion to choose between two reliable but conflicting medical opinions. *See Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001). A plan administrator may even prefer the opinion of its own consulting physician over that of an applicant's treating physician. *See Nord*, 538 U.S. at 829-34. Here, the administrator received the opinions of two consulting physicians, and Liberty was not required to accept Dr. Shannon's view just because it was reported first. Because Dr. Reecer's opinion rested on a reasonable interpretation of Zaeske's medical records, his opinion was sufficiently reliable to support Liberty Life's decision to deny Zaeske's claim for long-term disability benefits.

\*     \*     \*

For the foregoing reasons, the judgment of the district court is reversed, and the award of attorney's fees is also vacated. *See Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 901, 902-03 (8th Cir. 2006) (per curiam).

_____